## Town of Meacham v. L. S. Lacey.

1. HIGHWAY—*when penalty for obstruction of, will not be enforced.* In a proceeding under section 71 of the Road and Bridge Act, a penalty for the alleged obstruction of a highway will not be enforced where it appears that there was no intention upon the part of the defendant to violate the law and that he was at most guilty only of a technical violation of the law.

2. COMMISSIONERS OF HIGHWAYS—*power of individual commissioner.* In an emergency an individual commissioner has power to make a temporary crossing without special authority given to him at a regular or special meeting of the board of commissioners, where no expense would thereby have been cast upon the body politic.

3. COSTS—*who not liable for.* A town is not liable for costs and it is error to render judgment against it for costs.

Proceeding under section 71 of the Road and Bridge Act to recover penalty. Error to the Circuit Court of Marion County; the Hon. TRUMAN E. AMES, Judge, presiding. Heard in this court at the August term, 1906. Affirmed. Opinion filed March 15, 1907.

EARL C. HUGGINS and CHARLES H. HOLT, for plaintiff in error.

W. F. BUNDY, for defendant in error.

MR. JUSTICE HIGBEE delivered the opinion of the court.

This was a suit brought by plaintiff in error, the town of Meacham, under section 71 of the Road and Bridge Act, to recover a penalty for the alleged obstruction of a highway of said town.

The complaint, which was filed by the commissioners of highways of said town, charged that appellee Lacey, on or about the 30th day of August, 1905, unlawfully erected a certain dam or obstruction in a ditch on the south side of a certain public highway, describing the location, and that he did also unlawfully dig and remove a large quantity of dirt or soil from the traveled part of said highway, so as to leave a large opening therein, and did thereby then and there, and

still does obstruct the said public highway, contrary to the provisions of the statute, in such cases made and provided. In the Circuit Court, to which the case was appealed from the justice of the peace, the jury found Lacey not guilty, and a motion for a new trial having been overruled, a judgment was entered against the town for costs. Errors were assigned, concerning the admission and exclusion of evidence, the giving, refusing and modifying of instructions, and charging that the verdict and judgment were contrary to the evidence and the law.

The case appears to have been based upon the following circumstances, as shown by the proofs: In 1887 Lacey purchased and has ever since owned a 40-acre tract of land in said town of Meacham, in Marion county, described as being the northeast quarter of the northeast quarter of section No. 17, along the north side of which was, at the time this controversy arose, and many years prior thereto, located a public highway, running east and west. Lacey lived on another place which he owned, a mile and a half east of the tract above described, and traveled between the two places over the highway, entering the tract at the northeast corner where he had had a farm entrance for twenty years. Along the side of the road next to the 40-acre tract, there was a ditch or depression a few inches deep, used for draining the road. It was not of sufficient size or depth to prevent Lacey from hauling heavy loads across it on and off his land. On August 28, 1905, the commissioners of highways caused the highway to be worked with a grader, which drew in the loose dirt from the outside and rounded up the road in the center. They also caused the ditch or depression next to Lacey's land, where he had his crossing, to be cut out to a further depth of six or eight inches, leaving it in such condition that while a light load could be hauled across it, a heavy one could not. At that time Lacey was making arrangements to press the hay grown on the 40-acre tract, and on discovering the condition of the crossing, he, on the night of August 28, went to Mr. Warren, one of the commissioners, notified him what had been done and told him he was badly

in need of the crossing to get out with his hay, that he could not get out, and asked Warren to make the crossing good. The commissioner told him to put some rails in it so that he could cross. Lacey said he had no rails he could put in it and the commissioner told him to put some old hay in it. He afterwards prepared a notice in writing to the commissioners stating that the ditch had been cut in front of the gateway at the entrance to his premises, at the place in question, and notifying them to repair the same immediately. This notice appears to have been served on Mr. Warren and when introduced in evidence, bore the following indorsement: "August the 30th, 1905. Met with Mr. Puffer and decided to put in the bridge that Mr. Lacey called for." On the morning of August 30, Lacey met Mr. Warren and asked him if he had received the notice and Warren said that he had. Lacey then asked him if they had done anything at that point yet and Warren replied, "No, they are going to meet there this evening." Lacey then said, "Mr. Warren, I will be compelled to use that this evening, the hay presses will be over there in about an hour and if it is not repaired what shall I do?" and Warren said, "Try and fix it some way so you can cross until we get to it." That evening when it became necessary to cross the ditch with the hay, Lacey took a shovel and threw enough of the loose dirt which had been graded upon the south side of the road to make a crossing at the usual place. The space from which the dirt was taken in the road was about 11 feet long by 5 feet wide. Concerning the depth to which the dirt was removed in the highway and the extent to which the ditch was filled, there was a controversy in the evidence. The town introduced evidence tending to show that dirt was removed from the highway to a depth of five or six inches, while Lacey introduced evidence to the effect that not more than three inches of dirt was removed at any point. One witness testified to having driven over the space more than once without discovering the removal of the dirt until his attention was called to it. There was also evidence on one side tending to show that the amount of dirt put in the ditch was much more than

that which was removed, and on the other that the ditch was not filled up any more than it was before the plowing in it was done.

On September 2 the commissioners served a written notice on Lacey, stating that there were obstructions in the highway at the place in question, placed there by Lacey, consisting of dirt thrown in the drain on the south side of the road "and by digging and removing from the highway a quantity of soil or dirt, so as to leave a large opening in the traveled part of said highway," and notifying him that unless he removed the same within ten days, the commissioners would proceed to remove the obstruction at his cost or begin proceedings against him for obstructing the highway. Lacey did not remove the obstruction, and on September 25 the commissioners filed the complaint against him before a justice of the peace, which was the commencement of this suit.

On October 8, after the trial before the justice, the commissioners removed the dirt from the crossing and put in a culvert.

Conceding all that is claimed by appellant there appears to have been no serious obstruction of the highway on the part of Lacey, and no intent on his part to violate the law, and at most there could only be said to be a technical violation of the law. Under these circumstances, there should be no reversal of the judgment by the court below, unless the condition of the record absolutely demands it. The right of Lacey to the crossing was admitted and has been undisturbed for many years.

Section 9 of our statute on Roads and Bridges provides that "In grading public roads if a ditch is made at the junction of roads or at the entrance of gates or other openings of adjoining premises, the road authorities shall construct good and sufficient culverts or other convenient crossings." When the commissioners graded the road along Lacey's premises, they in fact destroyed his crossing by opening up the ditch, and it was their duty, under the law, to make him a culvert or other convenient crossing and this appears to have been fully recognized by the commissioners.

It is contended by appellant, that the commissioners could not legally give Lacey the right to make the crossing or to do any act in connection with the highway, except at a regular or special meeting of the board. This is true as a general rule without doubt, but here was an emergency which called for immediate action. If a plank or several of them should become removed from a bridge in the highway so as to make the crossing dangerous on a frequented road, it would hardly be necessary for one of the commissioners to hunt up another or both of the others, call a meeting and decide to replace the boards. If he did so, during the time so consumed, travel would be impeded or a severe injury might be incurred. Undoubtedly any commissioner could go at once and replace the boards, making the bridge safe or he could send some one else to do so for him. Lacey desired to use the crossing at once. It was a slight matter to make a temporary crossing, requiring no expenditure of money for material, and only the work of a man for a very short time.

We are of opinion that any one of the commissioners could have legally gone there without any authority given him at a regular or special meeting of the board and have made the temporary crossing. If Mr. Warren, as one of the commissioners, could have done this himself, he could have directed the road overseer or any one else to do it for him. He saw fit to instruct Mr. Lacey to do the work and in so doing Lacey was simply acting for the commissioner. Under such circumstances, we do not think that Lacey was subject to a penalty, under the statute, for placing sufficient dirt in the ditch to make him a crossing, or for failing to remove the same.

The dirt taken from the highway was not of great amount nor was it removed to any considerable depth and Lacey hauled his hay over the place where the dirt was removed. It was a controverted question of fact for the jury to determine whether the removal of the dirt constituted an obstruction of the highway. The jury found on this question in favor of defendant in error, and we are content with their finding.

Appellant complains that Lacey should not have been permitted to testify as to the conversation he had with Warren, the commissioner. From what we have above said, it will appear that the conversation with Warren was competent to show the conditions under which the alleged offense was committed. While the fact that the culvert was put in by the commissioners, after the commencement of the suit, did not tend to show directly whether or not Lacey was guilty of placing the obstruction claimed in the highway, yet it was admissible as characterizing the kind of crossing and its extent.

The instructions given in the case are not all free from objection, but upon the whole they presented the law with substantial accuracy. The case was fairly submitted to the jury, there was no substantial error in the admission or rejection of evidence, and substantial justice has been done. Under such circumstances the judgment will not be reversed. McDowell v. Jones, 116 Ill. App., 13.

It was error to render judgment against the town in this case for costs, as it is not liable under the law for costs, and the judgment for the same was probably inadvertently rendered. This error, however, will not require the reversal of the case as the mistake can be corrected in this court. School Directors v. Orr, 88 Ill. App., 648.

The judgment will be modified by striking out that portion which provides for costs and as so modified it will be affirmed.

*Affirmed.*